UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL ANTHONY WHITE,

    Plaintiff,

v.                                                        Hon. Sally J. Berens

COMMISSIONER OF SOCIAL SECURITY,         Case No. 1:20-cv-334

    Defendant.
_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment.

Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence and in accordance with the law it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks judicial review of this decision.

For the following reasons, the Court will **vacate** the Commissioner's decision and **remand** the matter for further factual findings pursuant to sentence four of 42 U.S.C. § 405(g).

### Standard of Review

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social

security case is limited to determining whether the Commissioner applied the proper legal standards in making his decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and his findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords to the administrative decision maker considerable latitude and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**Procedural Posture**

Plaintiff filed applications for DIB and SSI on August July 19, 2016, alleging that he became disabled as of June 15, 2016, due to depression and anxiety. (PageID.161, 173–74.)

2

Plaintiff was age 26 at the time of his alleged onset date. (PageID.161.) Plaintiff graduated from high school and had previous employment as a cashier. (PageID.341.) After Plaintiff's applications were denied, he requested a hearing before an Administrative Law Judge (ALJ).

ALJ Stephanie Katich conducted a video hearing on November 1, 2018, and received testimony from Plaintiff and Ryan Wilmer, an independent vocational expert. (PageID.79–109.) The ALJ held a supplemental hearing on April 2, 2019, and received testimony from Plaintiff, Plaintiff's mother, and Julie Dyer, an impartial vocational expert. (PageID.111–47.) On April 30, 2019, the ALJ issued a written decision finding that Plaintiff was not disabled from his alleged onset date through the date of the decision. (PageID.56–67.) The Appeals Council denied Plaintiff's request for review on February 21, 2020, making ALJ Katich's April 30, 2019 decision the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007).

Plaintiff initiated this action for judicial review on April 18, 2020.

## Analysis of the ALJ's Opinion

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing his past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his RFC is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).

After finding that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of June 15, 2016, the ALJ found that Plaintiff suffered from severe impairments of depressive disorder and anxiety disorder. (PageID.58.)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.59–60.) The ALJ considered Listings 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders). (PageID.59.) In connection with these listings, the

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

ALJ considered the four broad areas of mental functioning set out in the "paragraph B" criteria, 20 C.F.R. Pt. 404, Subpt. P, App 1. Under paragraph B, Plaintiff was required to prove one extreme limitation or two marked limitations in the following areas:

    1. Understanding, remembering, or applying information;

    2. Interacting with others;

    3. Concentrating, persisting, or maintaining pace;

    4. Adapting or managing oneself.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B), 12.08(B). A claimant is mildly limited if his ability to function in an area "independently, appropriately, effectively, and on a sustained basis is slightly limited." *Id.* § 12.00.F.2. A claimant is moderately limited if such ability is "fair," markedly limited if such ability is "seriously limited," and extremely limited if he has no ability to function in a given area. *Id.* The ALJ found that Plaintiff was moderately limited in all areas. (PageID.59–60.)

With respect to Plaintiff's RFC, the ALJ determined that Plaintiff retained the capacity to perform a full range of work at all exertional levels with the following mental limitations:

> The claimant can understand, remember and carry out simple instructions and tasks. He can make judgments on simple work related decisions and he can respond appropriately to occasional and superficial interactions with coworkers and supervisors. He should avoid work activity requiring interactions with the general public. He can respond appropriately to usual work situations, and he can deal with a routine work setting with very few, if any, changes in terms of work setting and processes.

(PageID.60.)

At step four, the ALJ determined that Plaintiff did not retain the RFC to perform any of his past relevant work. (PageID.65–66.) At step five, however, based on testimony from the vocational expert, the ALJ found that Plaintiff could perform the occupations of laundry worker, hand packager, and housekeeper, one million of which existed in the national economy that an

5

individual of Plaintiff's age, education, work experience, and RFC could perform. (PageID.66–67.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'").

## Discussion

Plaintiff raises a single issue in his appeal. He contends that the ALJ failed to properly weigh the opinion of Plaintiff's treating physician, Louis Joseph, M.D. (ECF No. 12 at PageID.2647.)

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition.[2] *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375-76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). That deference is appropriate, however, only where the opinion "is based upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citation omitted). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286-87 (6th Cir. 1994).

---

[2] The treating physician rule applies in this case as Plaintiff filed his claim before March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must give "good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (citation omitted). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376-77.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight it should be afforded. *Id.* at 376. In doing so, the ALJ must consider the following factors: (1) length of the treatment relationship and frequency of the examination, (2) nature and extent of the treatment relationship, (3) supportability of the opinion, (4) consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other relevant factors. *Id*. (citing 20 C.F.R. § 404.1527). While the ALJ is not required explicitly to discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x 448, 450 (5th Cir. 2007).

The ALJ addressed Dr. Joseph's October 11, 2018 opinion as follows:

> I have considered and given partial weight to the statement of Louis Joseph M.D., as his opinion is somewhat consistent with the medical evidence of record. Great weight is given to Dr. Joseph's opinion that the claimant has unlimited or very good ability to remember work-like procedures, understand, remember and carry out simple instructions and make simple work-related decisions. (Exhibit 12F/3). However, little weight is given to Dr. Joseph's opinion that the claimant would be unable to complete a normal workday and week without interruptions from his mental health symptoms and would be absent more than four days per month

7

>from work, as these limitations are not consistent with the medical evidence of record or not supported by Dr. Joseph's own treatment notes of the claimant. (Exhibit 12F). Additionally, Dr. Joseph does not provide reasoning for this limitation, especially in light the rest of the opinions in his statement, which do not show that the claimant has any other significant limitations. (Exhibit 12F). Dr. Joseph's treatment notes from June 2018, characterized the claimant's depression as "intermittent." (Exhibit 11F/29). The claimant reported that his depression was under control and that his passive suicidal ideation was less intense. (Exhibit 11F/32). The notes further states [sic] that the claimant still had some problems with focusing, but none were evident on the date of treatment. (Exhibit 11F/32). Treatment notes in August 2018 states the claimant "has not experienced significant suicidal ideation with intent in several months where he was screened and hospitalized." (Exhibit 11F/14). The claimant reported that his medications "help "70%" with respect to diminishing his symptoms of depression and anxiety." He reported he was happy with his current medication response. (Exhibit 11F/1).

(PageID.64–65.)

Plaintiff contends that the ALJ failed to properly weigh the portion of Dr. Joseph's opinion that he would be unable to complete a normal workday and week without interruptions from his mental health symptoms and would be absent from work more than four days per month. Plaintiff contends that, although the ALJ cited Dr. Joseph's treatment records indicating that Plaintiff's depression was "under control," that his suicidal ideation was "less intense," and that Plaintiff had not experienced any significant suicide ideation in several months, the ALJ disregarded portions of Dr. Joseph's treatment notes, other medical records, and non-medical evidence tending to support Dr. Joseph's opinions. In particular, Plaintiff notes that he consistently endorsed suicidal thoughts and was hospitalized at least twice during the relevant period for suicide ideation; had a history of inability to engage in sustained work activity—including a failed stint of basic training in the United States Air Force, which he left after five weeks due to his severe mental condition; required reminders from his mother to complete tasks around the house and to attend to his personal and medical care; and often lost his driving privileges due to a lack of motivation to complete his chores at home. (ECF No. 19 at

8

PageID.1031–32.) Plaintiff contends that the ALJ's reliance on selectively-chosen, half-sentences and phrases from the record presents a misleading picture of his mental condition. (*Id.* at PageID.1032–33.)

Defendant responds that, in formulating Plaintiff's RFC, the ALJ properly considered the evidence as a whole, including Plaintiff's subjective symptoms, the objective medical evidence, Plaintiff's daily activities, and improvement with treatment and appropriately accounted for all of Plaintiff's mental limitation by including restrictions in the RFC based on all of the evidence in the record. (ECF No. 22 at PageID.1047–56.) Defendant notes that the ALJ in fact discussed most of the evidence that Plaintiff claims the ALJ ignored to support her "skewed depiction" of Plaintiff's treatment records. (*Id.* at PageID.1046, 1056–57.) Finally, Defendant contends that the ALJ properly weighed Dr. Joseph's opinion under the treating physician rule and provided "good reasons" for according little weight to the portion of his opinion regarding Plaintiff's inability to meet competitive standards in his ability to complete a normal workday and week and his likely absences from work more than four days per month. (*Id.* at PageID.1058–60.)

As noted, the sole issue is whether the ALJ properly weighed the rejected portion of Dr. Joseph's opinion. There is no separate issue as to whether substantial evidence supports the ALJ's articulated RFC. In assigning little weight to Dr. Joseph's opinion, the ALJ noted that Dr. Joseph did not provide any reasoning for this limitation. This reason, alone, normally would justify the ALJ's rejection of Dr. Joseph's opinion and constitute a good reason. The Sixth Circuit has noted that an ALJ "properly [gives] a check-box form little weight," absent an "explanation for the restrictions entered on the form" or citation to "supporting objective medical evidence." *Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016); *see also Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016) ("We have previously

declined to give significant weight to rudimentary indications that lack an accompanying explanation."). Here, however, Dr. Joseph provided an explanation for his opinion, stating, "Michael has days when his depression is more intense, leading him to spend excessive time isolating and not leaving the house. His stress tolerance during these episodes would be diminished." (PageID.763.) The ALJ did not address this explanation. Would this have carried the day in the ALJ's view? Absent a remand there is no way to know.

The ALJ also said that Dr. Joseph's opinion was inconsistent with the medical evidence of record or not supported by Dr. Joseph's own treatment notes. The ALJ cited treatment notes from June 28, 2018, August 8, 2018, and September 2018, indicating that Plaintiff's depression was "intermittent," that Plaintiff reported that his depression was "under control" and his passive suicide ideation was "less intense," that Plaintiff had "not experienced significant suicidal ideation" since his March 2018 hospitalization, that his medications diminished his symptoms of depression and anxiety by "70%," and he was happy with his current medication response. (PageID.65, 693, 706, 721, 724.) Plaintiff argues that this cherry-picked evidence fails to accurately portray the extent of his mental health symptoms.

Arguments that the ALJ "cherry-picked" the record to diminish a claimant's symptoms are frequently made but are seldom successful because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Still, an ALJ may not "cherry-pick" isolated medical records to reject a treating physician's opinion. *See Minor v. Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (noting that "the ALJ cherry-picked select portions of the medical record to discredit Minor's complaints of pain") (citing *Germany–Johnson v. Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (per curiam)); *Goble v. Astrue* 385 F. App'x 588, 593 (7th Cir. 2010) ("An ALJ

is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding."). The Court finds that the ALJ's analysis presents the latter circumstance.

Despite the evidence the ALJ cited that Plaintiff's symptoms of depression were "intermittent," that Plaintiff reported improvement with treatment and his depression was "under control," and that his passive suicide ideation was "less intense," Plaintiff's treatment records show that he continued to suffer from depression and anxiety in late 2018 and early 2019, (PageID.969 ("still ongoing intermittent depression, anhedonia, poor motivation, poor focus"), 974 (reporting that he had "been experiencing some increase in depression and lower motivation), 996 (the "depression is still there," but "[n]ot everyday," and "anxiety 'still there'")), and continued to experience passive suicide ideation at times (PageID.982, 996). As these records show, Dr. Joseph's characterization of Plaintiff's depressive symptoms as "intermittent" is consistent with his explanation that Plaintiff's symptoms are more intense on some days than others. In other words, while Plaintiff's treatment records show that he had experienced some improvement in his symptoms of depression and anxiety, a fair reading also shows that his mental impairments were ongoing. *See Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 F. App'x 488, 494 (6th Cir. 2011) (noting the ALJ's failure to consider evidence indicating that the claimant continued to suffer from mental illness notwithstanding the doctor's observation that the claimant's "mood may be some better"). Other evidence also aligns with Dr. Joseph's opinion. For example, use of the family car was key to Plaintiff addressing his social anxiety by enabling him to get out more and engage with others, yet he often lost his driving privileges due to lack of motivation to complete his chores at home. (PageID.808, 964, 977, 980.) In this regard, the rejected portion of Dr. Joseph's opinion is not necessarily inconsistent

11

with the portion to which the ALJ assigned great weight. That is, while Plaintiff may have very good ability to remember, understand, and carry out simple instructions and make work-related decisions, low or reduced motivation resulting from his depression and anxiety may still be work-preclusive if he is unable to meet competitive standards for attendance or if his mental health symptoms prevent him from completing a normal workday.

Defendant contends that, because the ALJ discussed much of the evidence elsewhere in her decision, she did not ignore it. But simply mentioning evidence is insufficient to comply with the treating physician rule and good reasons requirement, as the ALJ must provide some explanation as to why cited evidence does not support the doctor's opinion. *Cf. Smalley v. Comm'r of Soc. Sec.*, No. 20-1865, 2021 WL 4026783, at *5 (6th Cir. Sept. 3, 2021) (noting that "the ALJ made no effort to explain why the cherry-picked factors he found relevant undermined Dr. Sagan-Yewah's conclusion that Smalley would need frequent breaks or would be unable to sit or stand continuously for more than one to two hours"). It is incumbent on the ALJ to explain why evidence that, on its face, appears to support Dr. Joseph's opinion, is inconsistent or not supportive of that opinion. Accordingly, the Court concludes that remand is appropriate based on the ALJ's failure to articulate good reasons for rejecting Dr. Joseph's opinion. *See Hensley v. Astrue*, 573 F.3d 263, 267 (6th Cir. 2009) ("We have stated that we do not hesitate to remand when the Commissioner has not provided 'good reasons' for the weight given to a treating physician's opinion and we will continue remanding when we encounter opinions from ALJs that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion.") (internal quotation marks and brackets omitted).

**Conclusion**

For the reasons stated above, the Court will **vacate and remand** the Commissioner's decision for further evaluation of Dr. Joseph's opinion under the treating physician rule as set forth herein.

An order consistent with this opinion will enter.

Dated: September 8, 2021                /s/ Sally J. Berens
                                        SALLY J. BERENS
                                        U.S. Magistrate Judge